IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM RIVERA, Plaintiff

v.

GEORGE LITTLE, et al., Defendants

: C.A. No. 2:22-cv-03902
: Magistrate Judge John C. Yoage
: District Judge
: Jury Trial Demand

RECEIVED JUN 2 2 2023 BY:_____

## First Amended Civil Complaint

### I. Introduction

This is a civil rights action filed by William Rivera, Pro-se, a Capital Case State inmate, for Declaratory, Injunctive, and monetary relief under 42 U.S.C. § 1983 for violations of his civil and constitutional rights protected by the 1, 8, and 14 Amendments to the U.S. Constitution and the American with Disabilities act, and section 504 of the rehabilitation act.

Plaintiff also alleges the Torts of intentional infliction of emotional distress, intentional infliction of mental pain and mental anguish, intentional infliction of severe depression, stress, anxiety, and other mental health problems. Calculated harassment, negligence and gross negligence. To include § 1983 civil conspiracy.

### II. Jurisdiction

1. This court has jurisdiction over this action under 42 U.S.C. §§ 1331 and 1343, to Plaintiffs claims of violation of Federal Constitutional rights.
2. Plaintiff claims for injunctive relief are authored by 28 U.S.C. §§ 2283, and Rule 65 of the Fed. R. Civ. Pro.
3. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.
4. The court has supplemental jurisdiction over the Plaintiff's state Tort Claims under 28 U.S.C. § 1367.

### III. Parties

5. Plaintiff William Rivera, at all times relevant during the events described in this complaint was incarcerated at SCI Phoenix Capital Case Unit, and is now illegally being housed on a Non Capital Case Unit (CCU), at SCI Phoenix indefinitely.

6. Defendant J. Terra was a Deputy Superintendent for Centralize Services employed at SCI Phoenix who was in charge of conducting Administrated Hearings for the Program Review Committee (PRC), and make recommendations to inmates designation to the Restricted Release List (RRL). He has ascended in rank to be the Facility Manager at SCI Phoenix since the filing of the initial civil complaint, and is now in charge of the daily safe and secure operation of SCI Phoenix and in charge of security and medical departments. Defendant J. Terra now has more power to make a recommendation for either continue placement and/or removal of an inmate from the RRL. He is sued in his individual capacity.

7. Defendant J. Sorber was the Facility Manager employed at SCI Phoenix, and was in charge of the daily operations of SCI Phoenix and oversee all security for the jail. He was in charge of reviewing all Administrated procedures and appeals — to include all desicions and recommendations made by the PRC to designate an inmate for placement on the RRL. He is sued in his individual capacity.

1

8. Defendant George Little was the Secretary of Department of Corrections for the State of PA and was in charge of the daily and safe and secure operations of all of the jail for the State, who was employed by the PA DOC to work at Central Office. Before policy DC-ADM 802 was revised on April 2022, Defendant Little was in charge of reviewing all recommendations for designation to the RRL for FINAL APPROVAL, and was the only person who had the power and final authority to place an inmate on the RRL designation. He was also in charge of creating and revising policy for all state jails under the PA DOC and to ensure that all of his policies were being enforced by his subordinates and all employees throughout the entire PA DOC system. He is sued in his individual and official capacities.

## IV. Facts.

9. On February 4, 1998 Plaintiff was found guilty of murder of the First degree on his criminal Case No. CP-51-CR-902431-1996, by a jury trial.

10. Following the Jury deliveration on finding the Plaintiff guilty of murder on the First degree, the Plaintiff was sentenced to Death and to serve the Plaintiff Death Sentence on Death Row and Capital Case Unit (CCU), per Title 61 Pa. Cons. Stat. § 4303, formerly codified at § 3003, which provides:

"The secretary of corrections shall, until infliction of Death Penalty... keep the inmate in solitary confinament. During the confinament, no person shall be allowed to have access to the inmate without an order of the sentencing court, except the following:
(1) The staff of the Department.
(2) The inmate's counsel of record or other attorney requested by the inmate.
(3) A spiritual adviser selected by the inmate or the members of the immediate family of the inmate.

11. The Defendants policy for the PA DOC that ENFORCES Title 61 Pa. Cons. Stat. § 4303, is governed by policy 6.5.8.1 of the Pennsylvania Department of Corrections Capital Case Procedures Manual, which requires the Defendants to continue the Plaintiff confinament on Death Row until the Plaintiff were resentenced to life imprisonment.

12. Policy 6.5.8.1.5.; Modification of Sentence read as follows:
(1) In the event that an order is received modifying the sentence of a Capital Case inmate to life imprisonment due to a resentencing proceeding held as the result of an appeal or Post Conviction Relief Act,... the facility records Supervisor must determine whether the order is valid and whether the District Attorney intends to appeal the order.
(2) If the District Attorney intends to appeal, the inmate shall not be moved from the Capital Case Unit (CCU) until the appeal is resolved. However, the inmate may be moved from the CCU, if the District Attorney does not file an appeal whithin 30 days.
(3) If the District Attorney does not intend to appeal and if the inmate does not remain subject to an execution sentence as the result of a prosecution other than the sentence modified in the order, the inmate may be moved from the CCU.

13. According to Title 61 Pa. Cons. Stat. § 4303 and the Defendants own policy 6.5.8.1, the Plaintiff could only be removed from CCU when the Plaintiff Death Sentence has actually been vacated or Modified.

14. On or approximately April 1998 Plaintiff was designated to live in the CCU along with all other CCU inmates pending Plaintiff execution.

15. On Nov. 12, 2019 the CCU stoped to be operated as an Administrated Custody (AC) status unit governed by the DC-ADM 802 policy and Security Level 5 (SL-5) housing unit, and the CCU began to be operated as a general population unit of EXCLUSIVELY DEATH SENTENCED PRISONERS and all CCU's inmates were permitted all priviledges alloted to all other regular general population inmates.

2

16. On 3.17.21 Plaintiff received a prison misconduct for assaulting CO James and Plaintiff was given 90 days of disciplinary time to be served in the prison Restricted Housing Unit (RHU).

17. Due to the Plaintiff misconduct, Plaintiff hadded to be temporarily removed from CCU and send to the RHU to serve his 90 days of disciplinary custody time.

18. On 6.14.21 Plaintiff 90 days of disciplinary time was completed, but Plaintiff was not returned back to his CCU housing.

19. On 6.16.21 Plaintiff appeared in front of Defendant J. Terra whom was part of the Program Review Committee (PRC).

20. Defendant J. Terra informed Plaintiff that Plaintiff would not be returned back to CCU and that Defendant J. Terra was going to hold the Plaintiff on the RHU on AC status and recomend that the Plaintiff be placed on the Restricted Release List (RRL) designation.

21. Plaintiff immediately informed Defendant J. Terra that Plaintiff criminal case at Docket No. CP-51-CR-902431-1996 Plaintiff was sentenced to Death and to serve Plaintiff sentence on a CCU, and that as such, the Defendant could not remove Plaintiff from CCU and designate the Plaintiff to a Non-CCU indefinitely without a proper court order vacating or removing the Plaintiff Death sentence to the side or modifying the Plaintiff sentence, and that the Defendants actions violated the law, and Plaintiff immediately demanded to be returned back to CCU along with all other sentenced Capital Case inmates by law.

22. Defendant J. Terra told Plaintiff; "I will make the recomendation for you to be placed on RRL and pass it on to the higher ups. I don't like you capital case inmates, you all should be in lock down and put to death, not walking around free."

23. On 6.28.21 Plaintiff wrote a request slip to staff to Defendant Sorber explaining to Defendant Sorber that Defendant Terra had submitted a recomendation for Plaintiff to be designated to the RRL, and that such recomendation was illegal and against the law as Plaintiff could not be removed from CCU without a court order and housed with Non-CCU inmates on a Non-CCU unit, and that this illegal actions violated the Plaintiff civil and constitutional rights protected by the 1, 8, and 14 Amendments to the U.S. Constitution and the laws of the Commonwealth of Pennsylvania criminal division.

24. Defendant Sorber refused to acknowledge and refused to respond to the Plaintiff request and supported the recomendation for the Plaintiff RRL designation made by Defendant Terra.

25. On 2.4.22 Defendant Terra conducted a Hearing with Plaintiff and notify Plaintiff that Defendant George Little had signed on their recomendation for Plaintiff to be placed on the RRL designation.

26. When Plaintiff asked Defendant J. Terra if Defendant Little obtained an approved court order stating that Plaintiff was to be removed from CCU and housed on a Non-CCU unit with Non-CCU inmates whom are not similarly situated as Plaintiff capital case status, Defendant J. Terra stated to Plaintiff: "We don't need a court order. You are in DOC custody. We can do whatever we want. You have been approved to be placed on RRL, so I am moving you now to L-Unit were you'll be on RRL."

27. Plaintiff was than immediately removed from the RHU on A-Unit and rehoused on the L-Unit to participate in the Intensive Management Unit (IMU) program, which is a step down program for all RRL designated inmates that are not Capital Case status prisoners.

28. Plaintiff is the only participant in the IMU program — and in the state of PA — whom have been ilegaly removed from CCU without a court order vacating, setting aside, or modifying the Plaintiff Death sentence and placed Plaintiff in a Non-CCU with Non-CCU inmates indefinitely to participate in the RRL step down IMU program with other inmates whom are not on Capital Case status and are not similarly situated as Plaintiff.

29. The IMU program is being operated by Department policy 6.5.1 and the IMU inmate handbook.

30. The IMU program phases goes as follow; 30 days on phase 6; 9 months on phase 5;

3

9 months on phase 4; 9 months on phase 3; 8 months on phase 2, and; one (1) year on phase 1.

31. When an IMU participant reaches phase 1 of the IMU program, that participant is to be removed from the IMU program and sended to the Management Control Unit (MCU) program to complete the last one (1) year of the program on phase 1.

32. Per the Defendants policy 6.5.1 and the IMU inmate handbook, the Defendants have the power to place any inmate in the IMU program on phase freeze or phase modification as the Defendants see it fit, and any inmate whom is unwilling to participate in the program can and will loose all earned priviledges in retaliation for not participating on the program.

33. Before the Plaintiff received the prison misconduct on 3.17.21 Plaintiff was misconduct free since 7.12.12.

34. However, despite the fact that Plaintiff is not a problematic inmate, Plaintiff was designated to the RRL in retaliation for the misconduct that Plaintiff received on 3.17.21.

35. Aside from the IMU program being 4 years long and all inmates being forced to participate in the program, the Defendants will retaliate against participants whom are not willing to participate by taking away the inmates priviledges or refusing to grant the inmates priviledges, such as TV, Radio, Tablet, Keyboard, access to phone, access to kiosk, denial of commissary, and other priviledges such as family visits, and placing participants on phase freeze or phase modification to make the inmates spend more time on the RRL designation in the SL-5 housing unit.

36. Being placed on the RRL designation and housed in the SL-5 housing unit in the IMU program, Plaintiff is being subjected to be locked down 22 hours per day with the exception of 2 hours of access to the yard per day (weather permit), and being strip searched everytime that the Plaintiff exits the cell and when Plaintiff return back to the cell, and Plaintiff has to be escorted being handcuffed with Plaintiff hands behind his back while the escorting officers hold on to a dog leach that they connect to the handcuffs.

37. All IMU participants are being subjected to a different cell move and different cell assignment every 90 days.

38. All of the Plaintiff personal property has been minimized and reduced to comply with the RHU and SL-5 housing unit to one (1) box of cell property contents and 1 legal exemption box for an active and open legal case with the approval of the Facility Manager, as those are the standards and rules for all RHU and SL-5 housing unit inmates. Any exes property that is not in compliance with the Defendants 6.5.1 and the IMU inmate handbook policy and rules will be immediately be removed from the cell and storied inside of a property room.

39. The IMU offer one (1) hour of out of cell group, however, no IMU participant will ever earn any certificate of completion for compliting groups programs as that is not permitted by the Defendants policy. All participants are restrained to a table during out of cell groups.

40. There are no religious services being offered in the IMU program and Plaintiff can only briefly speak to a chaplain (if they made a round) through the side of his door.

41. There are no contact visits for any IMU participant and no virtual visits are being permited where the family members or friends can come to the prison and be in a booth separated by a glass and be able to speak through a connected telephone on the wall.

42. The yard cage is about the average size of a horse's stall and there are no exersice equiptments, and one is only permitted to be inside of the yard cage by oneself.

43. The L-Unit IMU housing/program is a non-CCU housing unit that houses all non-CCU inmates whom the majority are mentaly ill and are constantly gangwaring/arguing and screaming at one another all day and all night and the mentaly ill inmates be banging one another out by banging on their metal desk and metal toilet to deprive one another of sleep, which extreme loud noise disrupts and disturb and deprive the Plaintiff from sleep; deprive Plaintiff from being able to listen to his TV or Tablet; deprive, disturb, and disrupts the Plaintiff ability from being able to concentrate when Plaintiff is reading a book or writing a letter, and Plaintiff present conditions

of confinement are deteriorating the Plaintiff mental health.

44. The housing unit is infected with bugs and flies that be crawling inside of the housing unit and causing a health and safety hazard concern that staffs are aware of and refuse to address, as the most severely mentally ill inmates are being permitted to ferment urine and feces inside of their cells and they be throwing it out of their cells on the tier, and when Plaintiff exit his cell to go to the shower, yard, group, law library, or any other out of cell activity, the bugs and flies be coming inside of the Plaintiff cell (see Exhibit A), and Plaintiff is being forced to eat all of his meals inside of his cell under the foul smell of urine and feces and with the bugs and flies flying around the Plaintiff cell, which foul and disgusting smell be causing Plaintiff digesting problems as the Plaintiff is not able to keep his food down as the Plaintiff be throwing up most of what the Plaintiff eats due to the unsanitary conditions on the housing unit.

45. Some of the mentally ill inmates have to be cell extracted from their cells and the staffs be spraying them with pepper spray or Oleoresin Capsicum (oc) spray to attempt to make them comply with orders to come to the door to be handcuffed and removed from the cell, and the Plaintiff is being exposed to the effects of the OC spray as it travels throughout the housing unit which makes the Plaintiff skin burns, makes the Plaintiff choke and cough and sneeze knots of mucus out of the Plaintiff nose, and burns on Plaintiffs eyes.

46. Plaintiff constantly remind the Defendants of the health and safety hazard living conditions on the housing unit and plea and beg the Defendants to move Plaintiff back to the CCU as per the Plaintiff Death sentence in criminal case No. CP-51-CR-902431-1996, but the Plaintiff pleas continue to be ignored and rejected by the Defendants and their agents.

47. Per policy DC-ADM 802 Sec. 4. B. 4., an inmate can be reviewed and removed from the RRL designation ANNUALY. However, acording to the Defendants, policy DC-ADM 802 has been suspended for the duration of the 4 years of the IMU program per policy 6.5.1, and that when an inmate annual review for RRL come up, the unit team along with all the Defendants and their agents will automaticaly recoment that RRL designation be continued pending completion of the IMU program, because acording to the Defendants it would not make any sense to place an inmate in a 4 years program if the Defendants are going to remove the inmate off of RRL in one year, which will defeat the purpose for the program, and that simply put, "It does not make any sense".

48. Plaintiff was placed on the RRL designation on Feb. 4, 2022, which per policy DC-ADM 802 Sec. 4, makes Plaintiff available for an RRL designation ANNUAL REVIEW on Feb. 4, 2023. However, because policy DC-ADM 802 has been suspended for the 4 years duration of the IMU program per policy 6.5.1, the Defendants automaticaly continued the Plaintiff RRL designation on Feb. 2023 pending the Plaintiff completion of the IMU program.

IV. Exhaustion of Administrated Remedies.

49. Plaintiff has exhausted all of his administrated remedies with respect to all claims and all Defendants.

V. Claims for Relief.

1. The actions of Defendant Terra in recomending that the Plaintiff be removed from CCU without any court order vacating, setting aside, or modifying the Plaintiff Capital case status, and recomending that the Plaintiff be designated to the RRL and housed in a non-CCU and IMU program violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff sentence at criminal docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1 and constituted deliberate indiference, calculated harassment, and cruel and unusual punishment in violation to the 8th Amendment to the U.S. Constitution; discrimination and retaliation, and violated the Plaintiff rights to the substantive and Procedural Due Process in violation to the 14 Amendment.

2. The actions of Defendant Terra in recomending that the Plaintiff be removed from CCU

5

without any court order vacating, setting aside, or modifying Plaintiff capital case sentence and against all of the Plaintiff pleas that the Defendants could not do that and violate the law, and the Defendant stating to Plaintiff: "I will make the recomendation for you to be placed on RRL and pass it on to the higher ups. I don't like you capital case inmates, you all should be in lock down and put to death, not walking around free", violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff sentence at criminal docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1 and constituted deliberate indifference, calculated harassment, and cruel and unusual punishment in violation to the 8th Amend.; discrimination, retaliation, and violated the Plaintiff substantive and Procedural Due Process in violation to the 14 Amend.

3. The actions of Defendant Sorber in ignoring the Plaintiff request from 6.28.21 and turning a blind eye to the illegal actions of Defendant Terra, and in supporting Defendant Terra's recomendation to remove Plaintiff from CCU and designate Plaintiff to the RRL and to a non-CCU indefinitely without a court order vacating, setting aside, or modifying Plaintiff capital case sentence and capital case designation violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff sentence at criminal docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1 and constituted failure to act, failure to intervene, refusal to act and refusal to intervene, deliberate indifference, calculated harassment, and cruel and unusual punishment in violation to the 8 Amend.; discrimination, retaliation, and violated the Plaintiff rights to the Substantive and Procedural Due Process in violation to the 14 Amend., as Defendant Sorber supported the illegal actions against Plaintiff by Defendant Terra, when Defendant Sorber had the power and authority to stop it and did not do anything about it.

4. The actions of Defendant Little in finalizing the Defendants recomendation and in designating Plaintiff to the RRL indefinitely and removing Plaintiff from CCU to non-CCU indefinitely and making Plaintiff the only Capital Case and Death Row inmate in the State of Pennsylvania to be designated to the RRL to be housed with non-Capital case status inmates on non-CCU indefinitely until the Plaintiff complies with all mandatory rules of the IMU program in order for the Plaintiff to be considered for RRL removal and to be returned back to CCU and without a court order vacating, setting aside, or modifying the Plaintiff Death sentence violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff Death sentence at criminal docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1 and constituted failure to act, failure to intervene, refusal to act, refusal to intervene, deliberate indifference, calculated harassment, and cruel and unusual punishment in violation to the 8 Amend.; discrimination, retaliation, and violated the Plaintiff rights to the Equal protection clause, and the Substantive and Procedural Due Process in violation to the 14 Amend.

5. The actions of Defendants Terra, Sorber, and Little in removing Plaintiff from CCU, designate the Plaintiff to the RRL, have Plaintiff housed in a non-CCU with no capital case status inmates indefinitely without a court order vacating, setting aside, or modifying the Plaintiff Death sentence, violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff Death sentence at criminal docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1 and stating to Plaintiff: "We don't need a court order. You are in DOC custody. We can do whatever we want. You have been approved to be placed on RRL, so I am moving you now to L-Unit were you'll be on RRL". Constituted deliberate indifference, calculated harassment, cruel and unusual punishment in violation to the 8 Amend.; discrimination, retaliation, and violated the Plaintiff rights to the Equal Protection Clause and Substantive and Procedural Due Process in violation to the 14 Amend.; and §1983 Civil conspiracy.

6. The actions of Defendants Terra, Sorber and Little in removing Plaintiff from CCU and designating Plaintiff to the RRL and housing Plaintiff on non-CCU and in IMU program indefinitely without a court order vacating, setting aside, or modifying the Plaintiff Death sentence, violated Title 61 Pa. Cons. Stat. §4303 and the Plaintiff Death sentence at criminal case docket No. CP-51-CR-902431-1996, to include the Defendants own policy 6.5.8.1; were there are no out of cell and no opportunity to congregate and no religious services being offered; were there are no contact visits; were Plaintiff is subjected to be locked down for 22 hours a day and 2 hours of yard recreation in a single yard cage with no exercise equipment 7 days a week; were there are no jobs opportunity or the ability

6

to earn money in the form of General Labor Pool (GLP); were Plaintiff is back on lock down after having spend 24 years in solitary confinament and being placed back again in solitary confinament indefinitely and Plaintiff being placed back in constant restraints and constant strip searches for all out of cell activities; were there are mentaly ill inmates gangwaring and arguing with one another everyday and disrupting and disturbing the unit everyday and the mentaly ill inmates are being permitted to ferment urine and feces inside of their cells and throwing same urine and feces outside of their cells on the tier floor which is attracting bugs and flies inside of the housing unit and Plaintiff is being forced to eat all of his meals inside of his assigned cell to the foul smell of urine and feces and under the unsanitary conditions with bugs and flies flying and hanging around the Plaintiff cell; were Plaintiff sleep is constantly being deprived, disrupted, and disturbed with the constant noise which also deprive, disrupts, and disturbs the Plaintiff from being able to listen to his TV and Tablet, and deprive, disrupts, and disturbs the Plaintiff ability to be able to concentrate whenever the Plaintiff is reading a book or writing a letter; were the mentaly ill inmates be getting cell and sprayed with OC spray which exposes the Plaintiff to the effects of the OC spray and of witnessing the inmates being beated up by the guards whom be brutalizing the inmates and be making the inmates scream for help and calling on to their mothers for help, and; were the Plaintiff present living conditions are deteriorating the Plaintiff mental health constitute denial of religious services and being able to congregate for religious services; denial of contact visits with family and friends to form an emotional, social, and supportive relationship, and caring relationship in violation to the 1st Amend.; Denial of prosocial contact and interactions with other prisoners to form social relationships in violation to the 1st Amend.; Deliberate indiference, calculated harassment, exposure to the side effects of chemical agents and OC spray, exposure to staff brutality on inmates, health and safety hazard conditions, exposure to excessive noise and gangwaring from other inmates, deprivation and lack of sleep, excessive and constant restraints and strip searches, cruel and unusual punishment, and the Plaintiff prolonged isolation and solitary confinament are deteriorating the Plaintiff mental health and Plaintiff is suffering from severe depression, severe mental pain, severe mental anguish, severe anxiety, lack of sleep, confusion, lost of interest, depersonalization, illusions, vivid fantasies, hallucinations, agressive fantasies, delirium, fear, paranoia, intolerance of social interactions, severe mental distress, inability to focus and consentrate, hostility, withdrawal from social contact, aggresion, extreme irritability of others, disturbance of attention and organization of thoughts, delusions, persecutory delusions and other psychological and psychiatric symptoms in violation to the 8 Amendment.; Discrimination, retaliation, imposes against Plaintiff a severe Atypical and significant hardship, violates the Plaintiff rights to the Equal Protection Clause, and violates the Plaintiffs rights to the Substantive and Procedural Due Process in violation to the 14 Amendment; §1983 civil conspiracy; violates title 2 of the American with Disabilities Act and Section 504 of the Rehabilitation Act; intentional infliction of all above mentioned psychological and psychiatrict symptoms and negligence and gross negligence — State Torts under the laws of Pennsylvania.

7. The actions of Defendant Little, the Defendants Succesor, and their agents in having suspended policy DC-ADM 802 for the duration of the 4 years of the IMU program as outlined on policy 6.5.1 and the IMU inmate handbook, have stiped the Plaintiff from the RRL Annual review as outlined in policy DC-ADM 802 Sec. 4. for RRL removal and is causing Plaintiff to spend more time in the RHU and SL-5 housing unit under the harsh and hazardous and unsanitary conditions as outlined throughout the complaint, in that the Plaintiff annual review was denied to Plaintiff on February 2023 as the Defendants automaticaly recomended that the Plaintiff designation on the RRL be continued pending the Plaintiff completion of the IMU program to which there is no appeal process because the RRL designation cannot be appealed and thus prolonging the Plaintiff confinament in isolation and solitary confinament and constitute deliberate indiference, calculated harassment, and cruel and unusual punishment in violation to the 8th Amendment; are causing the Plaintiff a severe Atypical and Significant

7

Hardship and violates the Plaintiff rights to the Substantive and Procedural Due Process in violation to the 14 Amendment.

## Requested Relief

Wherefore, Plaintiff request that the court grant Plaintiff the below request for relief:

A. Issue a declaratory judgment stating that:

1. The actions of the Defendants jointly and collectively are illegal and violated the law.
2. The Defendants jointly and collectively conspired to violate the Plaintiff civil and constitutional rights and the laws of the Commonwealth of Pennsylvania for the Criminal Division and to cause Plaintiff the harms as outlined throughout the civil complaint.

B. Issue a permanent injunction ordering Defendant G. Little and his successors and all of their agents jointly and collectively to:

1. Immediately remove Plaintiff from RRL designation and immediately remove Plaintiff from the IMU program and immediately house the Plaintiff back to the Plaintiff housing status in CCU and restore back to Plaintiff all priviledges granted to all CCU status inmates.
2. Issue any other injunction as the court see appropriate against Defendant Little, his successors, and all of their agents.

C. Award compensatory damages in the following ammounts:

1. $2,000,000.00 jointly and severaly against all defendants.
2. Any ammount of money that the court deems appropriate for all the claims and all damages done to the Plaintiff as to all claims in the complaint against all Defendants jointly and severaly.

D. Award punitive damages in the following ammount against each and all named Defendants in this civil complaint:

1. $1,000,000.00 against all Defendants jointly and severaly, or separately as this Honorable court deems appropriate.
2. Any ammount of money that the court deems appropriate for all the claims in the complaint against each and all named Defendants jointly and severaly, or separately as this Honorable Court deems appropriate.

## VI. Verification of Complaint.

I, Gabriel Rosa-Diaz (#FH7313), hereby certify and verify under the penalties of perjury of title 28 U.S.C. §1746, that i drafted this civil complaint on behalf of Plaintiff William Rivera (#DN-4295), based on all information relayed to me by the Plaintiff, and verify that all allegations made by the Plaintiff are true and correct, as i am also on RRL designation and housed in the IMU program with Plaintiff.

I, William Rivera (#DN-4295), hereby verify under the penalties of perjury of title 28 U.S.C. §1746, that i have read the foregoing drafted civil complaint, and i declare that all matters alleged therein are true and correct.
Executed this 19th day of June, 2023.

Respectfully Submitted, <u>William Rivera</u>
Firma Aquí

William Rivera
# DN-4295
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

June 19, 2023

Exhibit A

Bugs Attached

# Certificate of Service

I, William Rivera (# DN-4295), hereby certify that on this 19th day of June, 2023, i mailed a true and correct copy of the foregoing document titled: "First Amended Civil Complaint," via U.S. First class mail to the below listed participant:

Clerk's Office
U.S. District Court
601 Market Street, Room # 2609
Philadelphia, PA. 19106

By: *William Rivera*
Firma Aqui

William Rivera
# DN-4295
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

Through: *Gabriel Rosa-Diaz*
Gabriel Rosa-Diaz
FH 7313
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426





Gabriel Rosa-Diaz
FH 7313
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

U.S.M.S. X-RAY

PA DEPARTMENT OF CORRECTIONS
INMATE MAIL

neopost
06/20/2023
US POSTAGE $001.74
FIRST-CLASS
ZIP 19426
041M12252211

To: Clerk's Office
U.S. District Court
601 Market Street, Room # 2609
Philadelphia, PA. 19106