IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM RIVERA,
        Plaintiff

        v.

GEORGE LITTLE, et al.,
        Defendants

: C.A. No. 2:22-cv-03902
:
:
: District Judge John M. Younge
:
:
:
: Jury Trial Demand

Motion for leave to file a second Amended Civil Complaint

    Plaintiff, William Rivera, Pro-se, pursuant to Rule 15 (a) of the Fed. R. Civ. P. request this Honorable Court leave to file a second Amended Civil Complaint in order to add two (2) additional Defendants to this action: Defendants Laurel Harry (new Secretary for the PA DOC), and Tammy Ferguson (new Executive Deputy Secretary for institutional operations (EDSi).

    In order to also take away the courts confusion in this matter as to anything related to the Reid v. Wetzel, No. 1:18-cv-00176 class settlement agreement that the Defendants attorney have vehemently continue to manipulate this Honorable Court into dismissing the Plaintiff case, the Plaintiff have reamended his civil complaint without ever mentioning or making any refterences to nothing related in any particularity to the Reid v. Wetzel class action settlement agreement, as such, the Plaintiff humbly and respectfully request that this Honorable Court discontinue to allow the Defendants to mislead, misguide, and misdirect this case again through deception tactics and technics by opposing Defense counsel.

    This Court should grant leave freely to amend to allow Plaintiff to add 2 additional Defendants to this action and to bring forth claims against those 2 additional Defendants, and for Plaintiff to be able to clear away any further and any future confusion of this Court into being manipulated with Defense counsel deception tactics and technics about making any further refterences to the Reid v. Wetzel class settlement agreement that "DOES NOT HAVE TO DO AND IS IN NO WAY RELATED TO ANY CLAIMS THAT THE PLAINTIFF IS ADVANCING IN THIS CIVIL CASE". (see Forman v. Davis, 371,178,182, 83 s.ct. 227 (1962); Williams v. Cargill, INC., 159 F. Supp. 2d 984, 997-98 (s.D. Ohio 2001)).

                       Respectfully Requested,   _William Rivera_
                                       Firma aquí

                                     William Rivera (DN-4295)
                                     SCI Phoenix
                                     1200 Mokychic Drive
                                     Collegeville, PA. 19426

Through: Gabriel Rosa-Diaz
         Gabriel Rosa-Diaz (FH-7313)
         SCI Phoenix
         1200 Mokychic Drive
         Collegeville, PA. 19426

Date: 11.26.2023

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM RIVERA,
                 Plaintiff

        v.

GEORGE LITTLE, et al.
                 Defendants

: C.A. No. 2:22-cv-03902
:
: Magistrate Judge John M. Younge
:
: District Judge John M. Younge
:
: Jury Trial Demand

## Second Amended Civil Complaint

### I. Introduction

This is a civil rights action filed by William Rivera, Pro-se, a Capital Case state inmate for Declaratory, Injunctive, and monetary relief under 42 U.S.C. §1983 for violations of his civil and constitutional rights protected by the 1, 8, and 14 Amendments to the U.S. Constitution and the American with disabilities act, and section 504 of the rehabilitation act.

Plaintiff also alleges the Torts of intentional infliction of emotional distress, intentional infliction of mental pain and mental anguish, intentional infliction of severe depression stress, anxiety, worriness, and other psychological and psychiatrict mental health problems. Calculated harassment, negligence and gross negligence. To include §1983 civil conspiracy.

### II. Jurisdiction

1. This court has jurisdiction over this action under 42 U.S.C. §§ 1331 and 1343, to Plaintiffs claims of violations of Federal Constitutional rights.

2. Plaintiff claims for injunctive relief are authored by 28 U.S.C. §§ 2283, and rule 65 of the Fed. R. Civ. Pro.

3. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. The court has supplemental jurisdiction over the Plaintiff's state Tort claims under 28 U.S.C. §1367.

### III. Parties

5. Plaintiff William Rivera, at all times relevant during the events described in this Complaint was incarcerated in the Custody of the Pennsylvania Department of Corrections Capital Case Unit and Plaintiff is/was incarcerated at SCI Phoenix Capital Case Unit (CCU) and is now being housed on NPD CCU at SCI Phoenix in the Restricted Housing Unit (RHU) on the Restricted Release List indefinitely, (RRL).

6. Defendant J. Terra was a Deputy Superintendent for Centralized Services employed at SCI Phoenix who was in charge of conducting Administrated Hearings for the Program Review Committee (PRC) and make recomendations to inmates designation to the RRL. He has ascended in rank to be the Facility Manager at SCI Phoenix since the filing of the initial civil complaint, and is now in charge of the daily safe and secure operation of SCI Phoenix and in charge of security, medical, psychology, and psychiatrict departments. Defendant J. Terra now has more power to make a recomendation for either continue placement and/or recomendation for removal of an inmate from the RRL. He is sued in his individual and official capacities.

7. Defendant J. Sorber was the Facility Manager employed to work at SCI Phoenix, and was in charge of the daily operations of SCI Phoenix and oversee all security, medical, psychology, and psychiatrict

1

departments for the jail. He was in charge of reviewing all Administrated procedures and appeals, to include all decisions and recomendations made by the PRC to designate an inmate for placement on the RRL. He is sued in his individual and official capacities.

8. Defendant George Little was the secretary of the PA DOC and was in charge of the daily and safe and secure operations of all of the jails for the state, who was employed by the PA DOC to work at Central Office. He was in charge of creating and interpreting policy for all the jails in PA DOC, and to ensure that all of his employees and subordinates enforced all of his created, revised or amended policies, to include but not limited to policy DC-ADM 802, policy 6.5.1, and all policies of health and safety hazards, all policies for institutional programing and IMU and RHU and security level 5 (SL-5) housing unit policies, and all policies and rules governing all operations to all jails within the PA DOC. He was also in charge of reviewing inmates placement and designation to the RRL and in reviewing continued placement and/or removal from the RRL designation. He is also responsible for the creation of the IMU program and for directing the Plaintiff placement on RRL and placement in the IMU program. He is sued in his individual and official capacities.

9. Defendant Laurel Harry is the new secretary of the PA DOC. At all times relevant to the claims mentioned in this complaint, she is employed by the PA DOC to work at Central office. She took over all of the duties and responsibilities of Defendant G. Little, and Defendant Harry continue to follow, adhear, and support all policies and rules created by Defendant Little before he retired as mandated by the Defendant to be enforced, which Defendant Harry has directed all of her employees and all of her subordinates around the PA DOC under her management to continue to enforce. She is sued in her individual and official capacities.

10. Defendant Tammy Ferguson is the Executive Deputy Secretary for institutional operations (EDSI) in the PA DOC. At all times relevant to the claims mentioned in this complaint, she is employed by the PA DOC to work at central office. When Defendant Little revised and reformed and amended policy DC-ADM 802 on April 18, 2022, Defendant Little did shifted responsibility to the EDSI to review all inmates status to the RRL designation for either continued placement and/or removal from the RRL. She is also in charge of supervising and conducting tours inside the jails in the PA DOC to include SCI Phoenix and the IMU program. She is sued in her individual and official capacities.

## Statement of Facts

11. On February 4, 1998 Plaintiff was found guilty of murder of the first degree on his criminal case No. CP-51-CR-902431-1996, by a jury trial.

12. Following the jury delivieration on finding the Plaintiff guilty of murder on the first degree, the Plaintiff was sentenced to Death and to serve the Plaintiff Death Sentence on Death Row and Capital Case Unit (CCU), per title 61 Pa. Const. Stat. §4303, formerly codified at §3003.

13. The Defendants were operating the CCU under their policy DC-ADM 802 and SL-5 housing unit, and as such, the Plaintiff was subjected to be lock down in the prison RHU along with all other Capital case sentenced inmates, on Administrated Custody confinament.

14. Because the CCU was operated like a hole under SL-5 housing unit rules and policy DC-ADM 802, the Plaintiff was only permitted one (1) hour of outdoor exercize 5 days of the week — Monday to Friday — in a yard cage by himself without no exercize equiptment, in a cage that measured about 15 square feets and weather permit.

15. The Plaintiff was thus subjected to 23 hours per day lock down in solitary confinament and isolation unit Monday to Fridays, and to 24 hours lock down Saturday and Sunday.

16. Per the Defendants policy and SL-5 housing rules, everytime that the Plaintiff has to exit his cell for any activity or any reason at all, the Plaintiff is subjected to a dihumanizing visual strip search, on which the Plaintiff has to strip naked inside of his cell and hand his clothing for physical examination to the CO's through the steel door feeding aperture for contraband search.

17. After the co ensure that there is no contraband on the clothing, the Plaintiff is directed to place both his arms and hands extended in front of him palms down and up for visual inspection, than ordered to lift both arms above the head with hands facing the ceiling for the co to visually inspect the underarms; Plaintiff than is ordered to bend head sideway and pull ear forward and repeat same process for other side of head; Plaintiff than is instructed to run his fingers through his hair using both hands; open mouth and run fingers through gumlines and open mouth again and stick tongue out - lift head so that the co can see inside nostrils of nose - place both hands uptop of head and use one hand to pill the foreskin of penis back and expose the gland; use same hand to lift the penis up only, than testicles; extend both hands and arms in front of Plaintiff again for another visual inspection of palms up/down; Plaintiff is than directed to turn arounds with back visible to the co and spread wings or both arms extended sideways; lift one leg and expose bottom of foot and wiggle toes and repeat same process to other foot; Plaintiff than is directed to bend over at the waist and spread buttocks apart and hold for 3 seconds to expose the anus for visual inspection.

18. After the co is satisfy that there is no contraband, the Plaintiff clothings are returned to the Plaintiff one article of clothing at a time for Plaintiff to dress.

19. Once the Plaintiff is fully dress, the Plaintiff is directed to approach the door and place both hands behind the back and out the steel door feeding apperture and both the Plaintiff hands than are handcuffed with a theather or leach holding to the handcuffs.

20. Once the Plaintiffs hands are cuffed and secured, the Plaintiff door is ordered open and Plaintiff directed to step out the cell walking backwards and the Plaintiff is than pad/pat down searched by the co.

21. After the patdown search the co runs a handheld metal detector all around the Plaintiff body and to the bottom of Plaintiff foot, and than escort process will began.

22. Plaintiff is afforded with 3 opportunities to shower and shave every week. One monday; one Wednesday; one Friday.

23. Plaintiff is subject to a cell movement every 90 days per Defendants SL-5 housing policy.

24. Plaintiff personal property has been reduced and minimized to comply with the RHU and SL-5 housing unit policy and rule of one (1) box of cell property contents and one (1) legal exemption box for an open and active legal case with the approval of the Facility Manager. Any exes property that is not in compliance with the Defendants policy 6.5.1 will be immediately removed from the Plaintiff's cell and storied inside of a property room were it is easily stolen by other prisoners or bartered by the co's to other prisoners in exchange for commissary food items.

25. On Nov. 12, 2019 the ccu stoped to be operated as an Administrated Custody (AC) status unit governed by the DC-ADM 802 policy and SL-5 housing unit, and the ccu began to be operated as a general population unit of exclusively death sentenced prisoners and all ccu inmates were permitted all priviledges alloted to all other general population inmates.

26. On 3.17.21 Plaintiff received a prison misconduct for assaulting co James and Plaintiff was given 90 days of disciplinary time to be served in the RHU and SL-5 housing unit.

27. Due to Plaintiff misconduct, Plaintiff was removed from the general prison population and housed in RHU to serve his 90 days of disciplinary custody (DC).

28. On 6.14.21 Plaintiff 90 days on DC was completed, but the Plaintiff was not returned back to the general prison population unit.

29. On 6.16.21 Plaintiff appeared in front of Defendant J. Terra whom was part of the Program Review Committee (PRC).

30. Defendant J. Terra informed Plaintiff that Plaintiff would not be returned back to the general prison population (GP) and that Defendant J. Terra was going to hold the Plaintiff on the RHU on AC status and recomend that the Plaintiff be placed on the RRL designation.

31. On 6.28.21 Plaintiff wrote a request to staff to Defendant Sorber to request that Defendant Sorber take any actions to please stop the recomendation for Plaintiff to be placed on RRL submitted by Defendant J. Terra.

3

32. Defendant Sorber refused to acknowledge and refused to respond to the Plaintiff request and supported the recomendation made by Defendant Terra for Plaintiff to be placed on the RRL designation.

33. On 2.4.22 Defendant Terra conducted an AC hearing with the Plaintiff and notify Plaintiff that Defendant Little had signed the final approval on the recommendation for Plaintiff to be placed on the RRL designation.

34. Plaintiff was than rehoused in another unit within the RHU and SL-5 housing at SCI Phoenix and sended to the L-Unit to be forced to participate in the Intensive Management Unit (IMU) program, which is a stepdown program for all RRL designated inmates, and is controled and governed by the same policies and rules of the RHU and SL-5 housing policy DC-ADM 802 and policy 6.5.1. Thus the IMU program is being governed by two (2) different policies that contradicts and conflicts with one another as to how both policies are to be enforced.

35. Under policy DC-ADM 802, an inmate on the RRL designation is supposed to be reviewed for RRL removal annualy, however, under policy 6.5.1 and the IMU inmate handbook the IMU program is four (4) years long.

36. The IMU program phases are as follow: 30 days on phase 6: 9 months on phase 5: 9 months on phase 4: 9 months on phase 3: 8 8 months on phase 2, and: one (1) year on phase 1.

37. Per the Defendants policy 6.5.1 and the IMU inmate handbook, the Defendants have the power to place any inmate in the IMU program on phase freeze or phase modification, and any inmate whom is unwilling to participate in the IMU program can and will loose any and all earned priviledges in retaliation by PRC for refusal to participate in IMU program and placed on phase freeze and phase modification status. Priviledges range from TV, Radio, Tablet, extended phone calls, extended visits, extended access to the kiosk, Keyboards, extended commissary, etc...

38. The IMU program offer one (1) hour of out of cell (ooc) group with other IMU participants and everybody has to be handcuffed and secured to a table with the dog leach or thether, and no IMU participant can earn no certificate of completion for completing groups programs as that is not permitted by the Defendants policy, which basically the Plaintiff is doing a program for nothing as there are no certificates of completion.

39. There are no religious services being offered in the IMU program and Plaintiff can only briefly speak to a chaplain (if chaplain ever made round) through the steel door in between while lock and secured behind the door in cell.

40. There are no contact visits for any IMU participant and no virtual in person visits are permitted were the family or friends can come to the prison visiting room to see the Plaintiff in person and separated by a glass booth and be able to speak through a phone connected to the wall.

41. The L-Unit IMU housing program houses a bunch of mentally ill inmates whom are constantly gangwaring and arguing and screaming at one another all day and all night, and the mentaly ill inmates be banging one another out by banging on their metal desk, metal toilet, metal bed frame, and metal door to deprive one another of sleep, which extreme loud noise disrupts and disturb and deprive the Plaintiff from sleep; deprive Plaintiff from being able to listen to his TV and Tablet; deprive, disturb, and disrupts the Plaintiff ability from being able to concentrate when Plaintiff is reading a book or writing a letter or trying to meditate, and Plaintiff present conditions of confinament are deteriorating the Plaintiff mental health, to the point that the Plaintiff rarely comes out of his living quarters in order to avoid having to interact with anybody.

42. The most severely mentally ill inmates housed on the unit are being permitted to ferment urine and feces inside of their cells and they be throwing it out of their cells on the tier which is attracting and infecting the housing unit with bugs and flies that be crowling inside of the Plaintiff's cell, and Plaintiff is being forced to eat all of his meals inside of his cell under the foul and apaling smell of urine and feces and with bugs and flies sometimes landing inside of the Plaintiff food and which foul, disgusting, apaling and unsanitary conditions be causing Plaintiff digesting problems and Plaintiff not being able to keep his food down as the Plaintiff be throwing up most of what the Plaintiff eat due to the unsanitary conditions on the housing unit, and to loose his appetite and

refuse his meal trays. (See Exhibit A).

43. Some of the mentally ill inmates have to be cell extracted from their cells and staff be spraying them with pepper spray or oleoresin capsicum (OC) spray to attempt to make them comply with orders to come to their cell door to be handcuffed and removed from the cell, and the Plaintiff is being exposed to the effects of the OC spray as it travels throughout the housing unit which makes the Plaintiff skin burn all over, and makes the Plaintiff choke, cough and sneeze knots of mucus out of the Plaintiff's nose and burns on the Plaintiffs eyes and causes the Plaintiff to cry, in pain.

44. The Plaintiff has spended approximately twenty-five (25) years housed in the RHU and SL-5 housing units on AC and sometimes DC status and the Plaintiff has been exposed to all of the cruel and unusual conditions of confinament as outlined in this second amended civil complaint for approximately 25 years.

45. The Defendants know and are fully aware of the psychological effects and psychological impact that long term segregation and solitary confinament can cause to a human, as some of the most severely mentally ill inmates housed in the L-Unit at SCI Phoenix on RRL whom the Defendants have exposed to decades of long term segregation and solitary confinement have become sooo disturbed and sooo mentally ill that they be smearing urine and feces inside of their cells and rubbing it all over their bodies, and some even conduct self-harm and self-mutilation, by using their razors when handed to them for shave to cut and gash themselves open sooo profusely that the Plaintiff has witnessed some being taken to an outside hospital for medical treatment.

46. Due to the Defendants policy of RHU and SL-5 housing units were inmates have to be rotated from cell to cell every 90 days, the Defendants are subjecting and forcing the Plaintiff to move inside of the cells that were previously ocupied by mentally ill inmates which are not thoroughly clean and are still contaminated with the foul, disgusting, and apaling odor of blood, urine, and feces, and chemical agents.

47. Due to the Defendants having exposed the Plaintiff to approximately 25 years of isolation and solitary confinament in the RHU and SL-5 housing segregation units the Plaintiff have remained an illiterate and the Plaintiff has not been able to advance his fourth (4th) grade educational level.

48. Per the Defendants policy DC-ADM 802, an inmate placed on AC status in RHU and SL-5 housing units are to be periodically reviewed by the PRC every 90 days, to which an inmate on regular AC could be reviewed and released to the GP by the PRC.

49. This PRC 90 days review process for inmates housed in CCU never existed whether the inmate remained on AC status indefinitely, because prior to Nov. 12, 2019 the CCU was operated like an RHU and SL-5 housing unit indefinitely and the Defendants vehemently refused to release any CCU inmates to the GP.

50. Likewise, this 90 days PRC review process for an inmate placed on the RRL designation does not mean anything because the PRC does not have the power to release an RRL designated inmate to GP, and per the Defendants policy DC-ADM 802 Sec. 4, RRL designated inmates were to be reviewed for RRL annualy and only the PRC could make a recomendation annualy for RRL removal to the Executive Deputy Secretary for institutional operations (EDSi), and only the EDsi has the final power and authority to remove an inmate off of RRL designation, and thus the 90 days periodic review process for an inmate placed on the RRL designation are only being conducted for the GRANTING or DENIAL of privileges (See Exhibit B).

51. Before Defendant Little retired from office, Defendant Little revised and amended policy DC-ADM 802 on 4.11.22 to change and shift responsibility of RRL designation and placement from the Secretary of the PA DOC to the PA DOC EDSi, and on same date (4.11.22) Defendant Little suspended the RRL annual review for RRL designated inmates under policy DC-ADM 802 Sec. 4 for the duration of the 4 years of the IMU program under policy 6.5.1 that was issued on same date on 4.11.22.

52. Both policy DC-ADM 802 and 6.5.1 were issued on 4.11.22 and both policies became

effective on 4.18.22.

53. Defendant Little was responsible for having placed the Plaintiff on the RRL designation on 6.28.21, and responsible for having suspended the RRL annual reviews for RRL removal under policy Dc-ADM 802, for the duration of the 4 years IMU program under policy 6.5.1.

54. Defendant Little was responsible for creating and enforcing the contradictions of policies Dc-ADM 802 and policy 6.5.1.

55. When Defendant Little retired from the office of Secretary of the PA DOC Defendant Harry was assigned as the New Secretary of the PA Doc, and all of Defendant Little's responsibilities shifted to Defendant Harry.

56. Defendant Harry is responsible for continuing to enforce the suspension of the annual reviews for RRL designated inmates under policy Dc-ADM 802 Sec. 4., for the duration of the 4 years IMU program under policy 6.5.1.

57. Defendant Harry is responsible for prolonging the Plaintiff isolation and solitary confinament in RHU/IMU and SL-5 housing unit, and responsible for maintaining and continuing to enforce the contradictions of policies 6.5.1 and Dc-ADM 802.

58. Defendant Ferguson is responsible for continuing to enforce the suspension of policy Dc-ADM 802 and responsible for refusing to review the Plaintiff RRL designation annualy, and responsible for prolonging the Plaintiff confinament in isolation and solitary confinament in the RHU/IMU and SL-5 housing unit and in ordering that the Plaintiff be continued in the RRL designation and IMU program untill successfull completion of the 4 years or longer IMU program, because acording to the Defendants it would not make any sense to place an inmate in the RRL designation and in the IMU program for 4 years if the defendants are going to review and remove RRL designated inmates off of RRL in one year, which acording to the Defendants it will defeat the purpose of the IMU program, and that simply put; "It does not make any sense."

59. Defendant Ferguson is responsible for continuing to support and enforce policies 6.5.1 which is in total contradiction to policy Dc-ADM 802.

60. Defendant Harry is responsible for refusing to rewrite, revise, and reamend the contradictions of policies 6.5.1 and Dc-ADM 802, and for intentionally and maliciously prolonging the Plaintiff confinament in RHU/IMU and SL-5 housing.

61. Plaintiff was enrolled to participate in IMU program on 2.4.22 after being placed on the RRL designation by Defendant Little, which per policy Dc-ADM 802 Sec. 4., maked Plaintiff available for an RRL designation annual review on 2.4.23. However, because the Defendants have suspended policy Dc-ADM 802 and the RRL designation annual review for the 4 years duration of the IMU program under policy 6.5.1. the Defendants automatically continue the Plaintiff RRL designation on Feb. 2023 and recomended that in order for Plaintiff to be reviewed for RRL designation removal, that Plaintiff have to successfully complete the 4 years IMU program.

62. Defendants Little, Harry, Ferguson Sorber, Terra and their agents and predecesors in office are all responsible for having kept the Plaintiff lock down in isolation and solitary continament in the RHU/IMU and SL-5 segregation housing unit for apppoximately 25 years, and responsibles for inflicting upon Plaintiff and for exposing the Plaintiff to 25 years of psychological and mental health damages, and responsible for keeping the Plaintiff illiterate and unable to advance his 4th grade educational level. Plaintiff was assault free misconducts from 7.12.12 to 3.17.21.

63. Per the Defendants policy, placement on the RRL designation cannot be appealed and thus there does not exist an appeal process for placement on the RRL designation, however the Plaintiff have appealed the duration of his confinament in isolation and solitary confinament in the RHU/IMU and SL-5 segregation housing unit to the best of the Plaintiff fourth (4th) grade and illiterate educational level.

Ⅴ. Exhaustion of Administrated Remedies.

6

64. Plaintiff has exhausted all of his administrative remedies with respect to all Defendants and all claims.

## V. Claims for Relief.

1. The actions of Defendant Terra in recommending that the Plaintiff be placed on the RRL designation when Defendant Terra knew and was fully aware that Plaintiff is not a problematic inmate and that Plaintiff was misconduct free from 7.12.12 to 3.17.21 were done intentionally and maliciously and in order to keep the Plaintiff lock down in isolation and solitary confinement in RHU/IMU and SL-5 housing unit and in order to intentionally and maliciously continue to expose and inflict upon Plaintiff mental health problems and psychological torture and to prevent Plaintiff from being able to attend school and advance his 4th grade educational level, and constituted denial of education in violation to the 1st Amendment to the U.S. Constitution (Amendment); calculated harassment, deliberate indifference to Plaintiff mental health, and cruel and unusual punishment in violation to the 8th Amendment; discrimination, retaliation, and violated the Plaintiff rights to the substantive and Procedural Due Process in violation to the 14th Amendment; intentional infliction of mental health problems in violation to the 8th Amendment; intentional infliction of mental health problems, negligence and gross negligence — state Torts under the law of PA.

2. The actions of Defendant Sorber in ignoring the Plaintiff request from 6.28.21 and turning a blind eye to Plaintiff's appeal, and in supporting Defendant Terra's recommendation to have the Plaintiff placed on the RRL designation when Defendant Sorber knew and was fully aware that Plaintiff is not a problematic inmate and that Plaintiff was misconduct free from 7.12.12 to 3.17.21 were done intentionally and maliciously and in order to keep the Plaintiff lock down in isolation and solitary confinement in RHU/IMU and SL-5 housing unit and in order to intentionally and maliciously continue to expose and inflict upon Plaintiff mental health problems and psychological torture and to prevent Plaintiff from being able to attend school and advance his 4th grade educational level, and constituted denial of education in violation to the 1st Amendment; calculated harassment, deliberate indifference to Plaintiff mental health, cruel and unusual punishment, and intentional infliction of psychological and mental health problems in violation to the 8th Amendment; discrimination, retaliation and violated the Plaintiff rights to the substantive and Procedural Due Process in violation to the 14th Amendment; intentional infliction of psychological and mental health problems, negligence and gross negligence — state Torts under the law of PA.

3. The actions of Defendant Little in approving and finalizing Defendants Terra and Sorber recommendation and in designating Plaintiff to the RRL designation indefinitely and in ordering that the Plaintiff be placed in IMU program indefinitely untill the Plaintiff fully comply to participate in IMU program, and where the Plaintiff will never be reviewed for RRL designation removal untill successfull completion of IMU program, when Defendant Little knew and was fully aware that Plaintiff is not a problematic inmate and that Plaintiff was misconduct free from 7.12.12 to 3.17.21 were done intentionally and maliciously and in order to keep the Plaintiff lock down in isolation and solitary confinement in RHU/IMU and SL-5 housing unit in order to intentionally and maliciously continue to expose and inflict upon Plaintiff psychological and mental health problems and psychological torture and to prevent Plaintiff from being able to attend school and advance his 4th grade educational level, and constituted denial of education in violation to the 1st Amendment; calculated harassment, deliberate indifference to Plaintiff psychological and mental health problems, cruel and unusual punishment, and intentional infliction of psychological and mental health problems in violation to the 8th Amendment; discrimination, retaliation, and violated the Plaintiff rights to the substantive and Procedural Due Process in that the RRL designation cannot be appealed in violation to the 14th Amendment; intentional infliction of psychological and mental health problems, negligence and gross negligence — state Torts under the law of PA.

4. The actions of Defendants Terra, Sorber, and Little in recommending and placing Plaintiff on the RRL designation and in IMU/RHU and SL-5 program indefinitely, where there are no out of cell

(OOC) and No opportunity to congregate and No religious services being offered; were there are No contact or virtual visits; were Plaintiff is being subjected to be locked down for 22 hours a day and provided with 2 hours of yard and recreation (wheather permit) 7 days of the week in a single yard cage by himself and with No exercise equiptment; were jobs opportunities are only available for phase 2 SMU participants only with the approval of PRC; were Defendants placed Plaintiff back on lock down after the Defendants had forced Plaintiff to spend 24 years in isolation in solitary continament indefinitely and Plaintiff being placed back on lock down in isolation and solitary continament and being placed back in constant restraints and in constant strip searches for all OOC activities; were there are mentaly ill inmates gangwaring and arguing with one another everyday and disrupting and disturbing the housing unit everyday and the mentaly ill inmates are being permitted to ferment urine and feces inside of their cells and throwing same fermented urine and feces outside of their cells on the tier floor which is attracting bugs and flies inside of the housing unit and Plaintiff is being forced to eat all of his meals inside of his assigned cell to the foul and apalling smell of fermented urine and feces and under the unsanitary conditions with bugs and flies flying around and landing on and contaminating the Plaintiff food; were Plaintiff sleep is constantly being deprived, disturbed, and disturbed with the ongoing and constant gangwar and loud Noise that is being caused 24 hours a day 7 days of the week by the mentaly ill inmates that are constantly arguing and screaming at one another and banging on their cells metal desk, metal bed frames, metal toilets, and metal doors to deprive one another of sleep and which Noise also deprive, disrupts, and disturbs the Plaintiff ability from being able to listen to his TV and Tablet and deprive, disrupts, and disturbs the Plaintiff ability to be able to concentrate whenever the Plaintiff is reading a book or writing a letter; were the mentaly ill inmates be getting cell extracted and sprayed with OC spray which exposes the Plaintiff to the effects of the OC spray and to Plaintiff witnessing the inmates being beated up by the guards whom be brutalizing the inmates and making the inmates scream for help and call their mothers for help at the top of their lungs/lungs; were Plaintiff is being exposed to witness fellow inmates commit suicide and other mentaly ill inmates mutilate themselves by slashing and cutting themselves open with razor blades to which they have to be removed from the housing unit and rushed to the hospital, and; were the Plaintiff present living conditions are and continue to contribute and continue to deteriorate the Plaintiff mental health, constitute denial of contact visits and denial of virtual visits, denial of religious services and denial of being able to congregate for religious servicess, denial of contact and virtual visits with family and friends to form and develope personal and emotional attachment, personal and emotional social support, personal and emotional supportive relationship, personal and emotional caring relationship, denial of prosocial contact and prosocial interactions with family friends, and with other inmates, and denial of access to educational services to which the Plaintiff have been deprived and prevented from being able to advance his 4th grade educational level, and denial from being able to form social relationships with family, friends, and other prisoners in violation to the 1st Amendment; Deliberate indiference to Plaintiff mental health, calculated harassment, exposure to chemical agents and to the side effects of the OC spray chemical agents, exposure to witnessing staffs beat up on and brutalizing the inmates, exposure to witnessing suicide and witnessing self-harm and self mutilation being committed by other inmates, exposure to unsafe health and safety hazard conditions, exposure to excessive Noise and gangwaring and screaming from other mentaly ill inmates, deprivation-disruption-disturbance and lack of sleep, exposure to excessive strip searches, exposure to excessive and constant restraints, cruel and unusual punishment, exposure to excessive and prolonged isolation and to solitary continament which have deteriorated the Plaintiff mental health and have reduced the Plaintiff to suffering from the psychological and mental health symptoms of severe depression, severe mental pain, severe mental anguish, severe grief from deseased family and friends, severe anxiety, lack of sleep and imsonia, confusion, lost of interest, depersonalization, dihumanization, illusions, vivid fantasies, hallucinations, agressive fantasies, delirium, severe fear, severe paranoia, intolerance of social interactions, severe mental distress, severe inability to focus and concentrate, severe hostility, withdrawal from social contact, severe aggresion, extreme irritability

of others, disturbance of attention and organization of thoughts, delusions, persecutory delusions, delirium and other psychological and mental health symptoms in violation to the 8th Amendment; Discrimination, retaliation, imposes against Plaintiff a severe atypical and significant hardship and violates the Plaintiff's rights to the substantive and procedural Due Process in violation to the 14th Amendment; §1983 civil conspiracy - violates title 2 of the American with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA); intentional infliction of all above mentioned psychological and mental health symptoms, Negligence and gross Negligence — State Torts under the law of PA.

5. The actions of Defendant Little in having suspended policy DC-ADM 802 for the annual review of RRL designated inmates as outlined in policy DC-ADM 802 Sec. 4. have stripped the Plaintiff from being reviewed for RRL designation removal annually, in that 'Now under the suspension of of policy DC-ADM 802 the only possible way that the Plaintiff could and would be reviewed for RRL removal is under policy 6.5.1 upon successful completion of the IMU program which is 4 years or longer, and is causing the Plaintiff to being forced to spend more time in the RHU/IMU and SL-5 housing unit under the harsh, unsanitary, and unhealthy hazardous conditions as outlined throughout the complaint, in that the Plaintiff supposed annual review are now no longer being valid as under policy 6.5.1 the defendants will automatically recommend that the Plaintiff RRL designation be continued pending the Plaintiff successful completion of the IMU program to which there is no appeal process because placement on the RRL designation cannot be appealed and thus the defendants are prolonging and forcing the Plaintiff to spend more time in the RHU/IMU and SL-5 housing unit in isolation and solitary confinament, and constituted deliberate indiference to Plaintiff mental health, calculated harassment, and cruel and unusual punishment in violation to the 8th Amendment; Creation of contradictory and conflicting policies 6.5.1 and DC-ADM 802 which are forcing Plaintiff to spend more time lock down in isolation and solitary confinament in the RHU/IMU and SL-5 housing unit which are causing the Plaintiff a severe Atypical and Significant hardship, inflicting upon the Plaintiff a severe Atypical and significant hardship, and violates the Plaintiff rights to the substantive and procedural Due Process in violation to the 14th Amendment.

6. The actions of Defendant Harry in continuing to enforce the suspension of the annual review for RRL designated inmates under policy DC-ADM 802 Sec. 4., for the duration of the 4 years or longer IMU program under policy 6.5.1 and stating that the only possible way that the Plaintiff could and would be reviewed for RRL removal is upon successful completion of the IMU program under policy 6.5.1 which is 4 years or longer are causing the Plaintiff to being forced to spend more time in the RHU/IMU and SL-5 housing unit under the harsh unhealthy, and unsanitary and hazardous conditions as outlined throughout the complaint, and the Defendants continue to automatically recommend that the Plaintiff RRL designation 'be continued pending the Plaintiff successful completion of the IMU program to which there is no appeal process because placement on the RRL designation cannot be appealed and thus the Defendant is continuing to prolong and force the Plaintiff to spend more time in RHU/IMU and SL-5 housing unit in isolation and solitary confinament, and constitute deliberate indiference to Plaintiff mental health, calculated harassment, and cruel and unusual punishment in violation to the 8th Amendment- refusal to revise and/or reamend the contradictions and conflicts of policies 6.5.1 and DC-ADM 802 and continuing to enforce the suspension, contradictions, and conflicts of policies 6.5.1 and DC-ADM 802 which are forcing the Plaintiff to spend more time lock down in isolation and solitary confinament in the RHU/IMU and SL-5 housing unit which are causing the Plaintiff a severe Atypical and significant hardship, inflicting upon Plaintiff a severe Atypical and significant hardship, and violates the Plaintiff rights to the substantive and procedural Due Process in violation to the 14th Amendment.

7. The actions of Defendant Ferguson in refusing to review the Plaintiff RRL designation annually and in continuing to enforce the suspension of policy DC-ADM 802 sec. 4. for the duration of the 4 years or longer IMU program under policy 6.5.1 and stating that the only possible way that the Plaintiff could and would be reviewed for RRL removal is upon successful completion of the IMU

9

program under policy 6.5.1 which is 4 years or longer are causing the Plaintiff to being forced to spend more time in the RHU/IMU and SL-5 housing unit under the harsh unhealthy, and unsanitary and hazardous conditions as outlined throughout the complaint and the Defendant continue to automatically recommend that the Plaintiff RRL designation be continued pending the Plaintiff successfull completion of the IMU program to which there is no appeal process because placement on the RRL designation cannot be appealed and thus the Defendant is continuing to prolong and force the Plaintiff to spend more time in RHU/IMU and SL-5 housing unit in isolation and solitary confinement, and constitute deliberate indifference to Plaintiff mental health, calculated harassment, and cruel and unusual punishment in violation to the 8th Amendment: refusal to review RRL designated status annually and continuing to enforce the suspension of policy DC-ADM 802 sec. 4. for the duration of the 4 years IMU program under policy 6.5.1 which are forcing the Plaintiff to spend more time lock down in isolation and solitary confinement in the RHU/IMU and SL-5 housing unit which are causing the Plaintiff a severe Atypical and significant hardship, inflicting upon Plaintiff a Severe Atypical and significant hardship, and violates the Plaintiff rights to the substantive and Procedural due process in violation to the 14th Amendment.

8. The actions of Defendants Little, Harry, Ferguson, and all of the Defendants predecesors in office in having placed and keeping the Plaintiff in RHU and SL-5 housing unit in isolation and solitary confinament indefinitely for a combined period of time totaling approximately 25 years without permiting Plaintiff to be able to appeal his lock down in isolation and solitary confinament indefinitely for approximately 25 years combined have exposed and subjected the Plaintiff to be lock down in total isolation and solitary confinament for approximately 25 years confined to his assigned living quarters for 23 hours per day and 1 hour of outdoor recreation 5 days of the week —— Monday to friday —— and to 24 hours confined to his assigned living quarters Saturday and Sundays, recreation limited to a single yard cage (weather permit) without no exercise equiptment: were no contact visits were and continue to not be permitted: were no religious services were and continue to not be permitted. were no opportunity to be able to congregate for religious services were and continue to not be permitted: were no jobs opportunities were available; were no programs were available; were Plaintiff was kept in constant restraints and constantly being strip searched for all OOC activities and continue to be kept in constant restraints and continue to be strip searched for all OOC activities: were there were and continue to be mentally ill inmates gangwaring and arguing and screaming at one another everyday and everynight and disrupting and disturbing the housing unit day and night and the mentally ill inmates are permitted to ferment urine and feces inside of their cells and throwing same fermented urine and feces outside of their cells on the tier floor which attract bugs and flies inside of the housing unit and Plaintiff is being forced to eat all of his meals inside of his assigned cell to the foul and apalling smell of fermented urine and feces and under the unsanitary conditions with bugs and flies flying around and landing on and contaminating the Plaintiff food. were the Plaintiff sleep was and continue to be constantly deprived, disrupted, and disturbed with the ongoing and constant gangwar and loud noise that is being caused 24 hours a day 7 days of the week by the mentally ill inmates that are constantly arguing and screaming at one another and banging on their cells metal desk, metal bed frame, metal toilet, and metal doors to deprive one another of sleep and which noise also deprive, disrupts, and disturbs the Plaintiff ability from being able to listen to his TV and Tablet and deprive, disrupts, and disturbs the Plaintiff ability to be able to concentrate whenever the Plaintiff is reading a book or writing a letter: were the mentally ill inmates were and continue to be getting cell extracted and sprayed with OC spray which exposes the Plaintiff to the effects of the OC spray and to Plaintiff witnessing the inmates being beated up by the guards whom be brutalizing the inmates and making the inmates scream for help and call their mothers for help at the top of their lungs. were Plaintiff was and continue to be exposed to witness fellow inmates commit suicide and other mentally ill inmates mutilate themselves by slashing and cutting themselves open with razor blades to which they have to be removed from the housing unit and rushed to the hospital, and: were the Plaintiff living conditions were and continue to expose and continue to contribute and continue to deteriorate the Plaintiff mental health: were the

10

Plaintiff was and continue to be denied access to school and continue to be deprived from receiving educational services and continue to be deprived from being able to advance his illiterate 4th grade educational level, and constitute denial of contact visits and denial of virtual visits, denial of religious services and denial of being able to congregate for religious services, denial of contact and virtual visits with family and friends to form and develop personal and emotional attachment / personal and emotional social support / personal and emotional supportive relationship / personal and emotional caring relationship, denial of prosocial contact and prosocial interactions with family / friends / and fellow inmates, and denial to access to educational services to which the Plaintiff have been deprived and prevented from being able to advance his 4th grade educational level and remain illiterate, and denial from being able to form social relationships with family, friends, and fellow prisoners in violation to the 1st Amendment · Calculated harassment, exposure to chemical agents and to the side effects of the OC spray chemical agents, deliberate indifference to Plaintiff mental health, exposure to witnessing staffs beat up on and brutalizing the inmates, exposure to witnessing inmates commit suicide and witnessing selfharm and self-mutilation being committed by other inmates, exposure to unsafe health and safety hazard conditions, exposure to excessive noise and gangwaring and screaming from other mentally ill inmates, deprivation-disruption-disturbance and lack of sleep, exposure to excessive strip searches, exposure to excessive and constant restraints, cruel and unusual punishment, exposure to excessive and prolonged isolation and solitary confinement which have deteriorated and continue to deteriorate the Plaintiff mental health and have reduced the Plaintiff to suffering from the psychological and mental health symptoms of severe depression, severe mental pain, severe mental anguish, severe grief from deceased family and friends, severe anxiety, lack of sleep and insomnia, confusion, lost of interest, depersonalization, dihumanization, illusions, vivid fantasies, hallucinations, aggressive fantasies, delirium, severe fear, severe paranoia, intolerance of social interactions, severe mental distress, severe inability to focus and concentrate, severe hostility, withdrawal from social contact, severe aggression, extreme irritability of others, disturbance of attention and organization of thoughts, loss of memory and things that could easily be remembered, delusions, persecutory delusions, delirium and other psychological and mental health symptoms and problems in violation to the 8th Amendment· Discrimination, retaliation, have imposed against Plaintiff and continue to impose a severe Atypical and Significant hardship, and violates the Plaintiff rights to the substantive and Procedural Due Process in violation to the 14th Amendment· §1983 civil Conspiracy· violates title 2 of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act· intentional infliction of all above mentioned psychological and mental health symptoms and mental health problems, negligence and gross Negligence — State Torts under the law of PA.

### Requested Relief

Wherefore, Plaintiff request that the court grant Plaintiff the below requested relief:

A. Issue a declaratory judgment stating that:

1. The actions of the Defendants jointly and collectively are illegal and violates the law and the Constitution of the United States.
2. The Defendants jointly and severaly conspired to violate the Plaintiff civil and constitutional rights and gave cause to causing the Plaintiff all the harms outlined throughout the civil complaint.

B. Issue a permanent injunction ordering Defendants Little, Harry, Ferguson, their agents and successors in office to:

1. Immediately remove Plaintiff from RRL designation and all RHU's and SL-5 housing units and IMU program and immediately release the Plaintiff to the general prison population and restore back to Plaintiff all general population privileges.

2. Issue any other injunction that the court deems appropriate against all Defendants and their agents and all their successors in office.

C. Award compensatory damages in the following amounts:

1. $2,000,000.00 jointly and severally against all Defendants, their successors in office, and their predesesors in office.

2. Grant any amount of money that the court deems appropriate for all claims and all damages done to the Plaintiff as to all claims in the complaint against all Defendants jointly and severally for the span of approximately 25 years that the Defendants have kept the Plaintiff housed in RHU and SL-5 housing units in total isolation and total solitary confinement without Due Process.

D. Award punitive damages in the following amount against all named Defendants jointly and severally or as the court deems appropriate as to all named Defendants in the civil complaint:

1. $1,000,000.00 against all Defendants jointly and severally, or separately as this Honorable Court deems to be just and appropriate.

2. Any amount of money that the court deems appropriate for all the claims in the complaint against each and all named Defendants jointly and severally, or separately as this Honorable Court deems to be just, fair, and appropriate.

III. Verification of Complaint.

I, Gabriel Rosa-Diaz (# FH 7313), hereby certify and verify under the penalties of perjury of title 28 U.S.C. §1746 that i drafted this Second Amended Civil Complaint on behalf of Plaintiff William Rivera (#DN 4295), based on all information relayed to me by the illiterate Plaintiff, and verify that all allegations and claims made by the Plaintiff are true and correct, as i am also on the RRL designation and housed in SCI Phoenix L-Unit in RHU/IMU and SL-5 housing unit program with Plaintiff whom is housed in front of my assigned cell across the tier in LB-1006 and i am housed in LB-1008. Executed Nov. 26, 2023 at SCI Phoenix.

I, William Rivera (DN 4295), hereby verify under the penalties of perjury of title 28 U.S.C. §1746, that i have read the foregoing drafted civil complaint, and i declare that all facts alleged therein are true and correct. Executed Nov. 26, 2023 at SCI Phoenix.

Respectfully Submitted,

_William Rivera_
Firma aquí

William Rivera (#DN-4295)
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

Through: Gabriel Rosa-Diaz
Gabriel Rosa-Diaz (FH 7313)
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

Nov. 26, 2023

12

Exhibit   A

Bugs   Attached



Exhibit B



**pennsylvania**
DEPARTMENT OF CORRECTIONS

**TO**        Intensive Management Unit (IMU) Inmates

**FROM**      John Wetzel
              Secretary of Corrections

**DATE**      July 8, 2021

**RE**        Housing Status

In order to provide an environment where you can work on your history of misconduct and violence in a setting that protects both our staff and your fellow incarcerated individuals, we have created the Intensive Management Unit (IMU). The programming is designed to give you insight into the thinking errors that lead to inappropriate behavior. As you make progress on programming and your behavior improves, you will earn additional privileges. I encourage you to embrace this opportunity.

The IMU is a security level 5 or restricted housing unit (RHU); therefore, your privileges are in accordance with your status as outlined in the **DC-ADM 801 Inmate Discipline** or **DC-ADM 802 Administrative Custody Procedures**.

I recognize that due to the pandemic, you were delayed in receiving a response on your Restricted Release List (RRL) annual review. The majority of the annual reviews have been processed and you may have already received a response, or will receive a response in the near future. Although this delay was due to the COVID-19 pandemic, the final responses are based on your continued progress and an updated referral from each facility. For those of you who are not on RRL, but may be pending placement or involved in a specialized program, your status is also under review, and you will receive an update in the near future. To highlight a few topics:

- Your annual review process remains as outlined in the **DC-ADM 802, Section 2**.
- An individual on RRL AC status may be considered for PRC-approved privileges after 90 days. Privileges and timeframes are outlined in the **DC-ADM 802, Section 3**.
- Your path off RRL is for you to maintain a positive adjustment and obtain unit team/administration's support for removal. Final approval currently remains at the discretion of the Secretary.

**Why the Name Change?**

Our previous approach to managing individuals who present unique and serious security risks to the orderly operation of our facilities and a safety risk to staff and others was effective in reducing violence; however, the new approach will provide you with more opportunity to address whatever issues are leading to your inappropriate behavior. This new approach is to give you a path, through a combination of intensive programming and continuing appropriate behavior, to return to general population. The general idea is to provide an individualized plan intertwined with benchmarks to allow you to demonstrate

a positive adjustment.  The actual process, benchmarks, program plan, and length of time spent in the tiers will be based on your individual risks and needs.  Your RRL status remains the same, and you are being housed with others who have a similar status as you embrace this opportunity.

**What about Now?**

Program participants will receive a minimum of 2 hours of out-of-cell exercise each day (7 days a week). The programming and incentives outlined below will become available to you beginning **July 12, 2021**. Please note that the items listed below may be modified or adjusted as the program progresses.    This memo will remain in effect until such procedures are released.  These benchmarks are a minimum requirement and PRC may grant beyond the listed quotas.  If you are already receiving more than what is listed below, your allotments will not be impacted.

| Programming Benchmarks | Incentive |
| --- | --- |
| Completion of In-Cell Activity | 1-hour out-of-cell group, bi-weekly, to discuss in-cell work |
| Positive Participation | |

The benchmarks outlined below are for you to achieve.  Evaluation of your progress toward earning the incentives will begin **July 12, 2021**.  If you reach incentives based on the benchmarks and then regress, your required time to reach the benchmark resets.

| Behavior Benchmarks |
| --- |
| Positive Participation in Programming |
| Positive out-of-cell Conduct |
| Positive Reports from your Unit Team/DC-17X |
| No misconducts for 60-days |

| Privilege | Length of Time | Incentive |
| --- | --- | --- |
| Phone Call | 2 months | 2 phone calls per week |
| Tablet/Kiosk Access | 3 months | 1 tablet/kiosk connection per week |
| Video Visit | 5 months | 1 extra video visit per month |
| Meal | 7 months | 1 out-of-cell meal per week (may be congregate) |

Lastly, PRC or your unit team may revoke your privileges based on a change in individual need, safety and security, or inappropriate behavior.  Revocations of privileges must be documented in your **DC-17X, Adjustment Record for SL5 Inmates** and **Integrated Case Summary (ICAR).**

Certificate of Service

I, William Rivera, (#DN 4295), hereby certify that on this 26th day of November, 2023, i mailed a true and correct copy of the foregoing documents titled: " Motion for leave to file a Second Amended Civil Complaint", and "Second Amended Civil Complaint", via U.s. First Class mail to the below listed participant:

Office of the Clerk
U.S. District Court
601 Market Street, Room #2609
Philadelphia, PA. 19106

By: William Rivera

William Rivera
#DN-4295
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

Through: Gabriel Rosa-Diaz

Gabriel Rosa-Diaz
FH 7313
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

PA DEPARTMENT OF
CORRECTIONS
INMATE MAIL

neopost
11/27/2023
US POSTAGE $002.07

FIRST-CLASS MAIL

ZIP 19426
041M12252211

SCI- Phoenix
Name ● Gabriel Rosa-Diaz
Number FH 7313
1200 Mokychic Drive
Collegeville, PA. 19426

RECEIVED
NOV 29 2023

To: Office of the Clerk
U.S. District Court
601 Market Street, Room # 2609
Philadelphia, PA. 19106